**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

KENNETH ZERANTI,

<div style="text-align:center">Plaintiff,</div>

<div style="text-align:center">vs.</div>

Civil Action No.:  **1:15-cv-488**

UNITED STATES OF AMERICA and
ERICA L. SARGENT, Ph. D.

<div style="text-align:center">Defendants.</div>

---

<div style="text-align:center">

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO THE MOTION OF THE DEFENDANT,**
**UNITED STATES OF AMERICA,**
**TO DISMISS AND FOR SUMMARY JUDGMENT**

</div>

---

Dated:  August 1, 2018

<div style="margin-left:40%">

**WOODS OVIATT GILMAN LLP**
Donald W. O'Brien, Jr., Esq.
*Attorneys for Plaintiff*
700 Crossroads Building
2 State Street
Rochester, New York 14614
585.987.2800

</div>

{6422208: }

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 1

STATEMENT OF THE CASE .................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

POINT I        APPLICABLE STANDARDS .............................................................................. 2

   A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction ............................................. 2

   B.  Standard on a Summary Judgment Motion ...................................................................... 4

POINT II       STATUTORY FRAMEWORK .............................................................................. 4

POINT III      DOCTOR SARGENT WAS ACTING WITHIN THE SCOPE OF HER
               EMPLOYMENT ................................................................................................... 6

   A.  The Mishandling of the Transference Phenomenon Constitutes Malpractice or
      Professional Negligence .................................................................................................... 6

   B.  If Dr. Sargent's Conduct was not Professional Malpractice, then her Conduct
      was Intentional and the Plaintiff's Claim is Authorized by 38 U.S.C. §7316(f). ........... 13

POINT IV       PLAINTIFF'S CLAIM OF NEGLIGENT SUPERVISION IS NOT
               BARRED BY THE GOVERNMENT'S NEWLY-ASSERTED
               DISCRETIONARY FUNCTION DEFENSE ....................................................... 14

CONCLUSION ........................................................................................................................ 18

## TABLE OF AUTHORITIES

*Page*

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ............................................................ 4

*Andrews v. United States*, 732 F.2d 366, 371 (4th Cir. 1984) ........................................................ 9

*Baumgart v. Stony Brook Children's Serv., P.C.*,
   2005 U.S. Dist. LEXIS 32389 *11 (E.D.N.Y. 2005)........................................................ 3

*Benavidez v. United States*, 177 F.3d 927, 930 (10th Cir. 1999).................................................... 8

*Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988) ........................................................ 15

*Boyd v. United States*, 881 F.2d 895, 897-98 (10th Cir. 1989).................................................... 16

*Brandford v. Singh*, 136 A.D.3d 726, 728 (2d Dept. 2016)............................................................ 7

*Bryan v. Bunis*, 208 A.D. 389, 390 (4th Dept. 1924)................................................................ 12

*Canadian Overseas Ores, Ltd. v. Compania de Acero del Pacifico S.A.*,
   528 F.Supp. 1337, 1344 (S.D.N.Y. 1982) ........................................................ 15

*Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) .................................................... 15

*Cronin v. Hertz Corp*, 818 F.2d 1064 (2d Cir. 1987) ................................................................ 7

*Crosby v. United States*, 2014 U.S. Dist. LEXIS 29228 at *5 (D.S.C., March 6, 2014).............. 14

*Crow v. United States*, 634 F.Supp. 1085, 1087-88 (D. Kan. 1986) ............................................ 15

*Cusamano v. Carlsen*, 2011 U.S. Dist. LEXIS 154403 at * 18 (N.D.N.Y., Dec. 16, 2011) ........ 14

*De Wald v. Seidenberg*, 297 N.Y. 335, 338 (1948) ................................................................ 11

*Dupree v. Giugliano*,
   87 A.D.3d 975, 977-978 (2d Dept. 2011), *affirmed,* 20 N.Y.3d 921 (2012).............................. 9

*Fitzpatrick v. United States*, 726 F.Supp. 975, 978 (D.C. Del. 1989) ............................................ 3

*Franklin v. United States*, 992 F.2d 1492 (10th Cir. 1993) ........................................................ 13

*Gibbons v. Fronton*, 533 F.Supp.2d 449, 455 (S.D.N.Y. 2008) .................................................... 15

*Green v. United States*, 630 F.3d 1245, 1254 (9th Cir. 2011) ...................................................... 17

*Hutchison v. United States*,
   2017 U.S. Dist. LEXIS 79044 at *13 (D. Kan., May 23, 2017)........................................ 14, 18

*Ingram v. Faruque*, 728 F.3d 1239, 1249 (10th Cir. 2013) ........................................................ 14

*Ira S. Bushey & Sons, Inc. v. United States*,
   276 F. Supp. 518, 527 (E.D.N.Y. 1967), *affirmed,* 398 F.2d 167 (2d Cir. 1968).................... 12

*Jacques v. United States,*
  2015 U.S. Dist. LEXIS 21880 at *16 (D.C. Mass., February 23, 2015) ................................ 12

*L.L. v. Medical Protective Co.*, 122 Wis. 2d 455 (1984) ............................................................ 8

*Learner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) .................................................. 3

*Leone v. United* States, 690 F.Supp. 1182, 1184 (E.D.N.Y. 1988) ............................................ 14

*McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) ................................................................ 4

*N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 252 (2002) .............................................................. 18

*O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002) ................................................ 17

*Oberson v. USDA*, 514 F.3d 989, 998 (9th Cir. 2008) ................................................................ 16

*Parker v. United States*, 2018 U.S. App. LEXIS 11731 at *4 (7th Cir. May 4, 2017) ................ 14

*Petrescu v. College Racquet Club, Inc.*, 40 A.D.3d 947, 949 (2d Dept. 2007) ........................... 7

*Petrousky v. United States*, 728 F.Supp. 890, 897 (N.D.N.Y. 1990) ............................................ 7

*Pitt v. Matola*, 890 F.Supp. 89, 92 (N.D.N.Y. 1995) .................................................................... 7

*Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992) .................................................... 15

*Rayonier Inc. v. United States*, 352 U.S. 315, 320 (1957) ......................................................... 17

*Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979) .................................................................... 7, 11

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) ............................ 3

*Roe v. Cal. Dep't of Developmental Servs.*,
  2017 U.S. Dist. LEXIS 81493 (N.D. Cal., May 26, 2017) .......................................................... 9

*Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) ........................................................... 4

*Rosse v. United States*, 110 F.Supp.3d 415, 424 (N.D.N.Y. 2015) ........................................... 18

*Roy v. Hartogs*, 85 Misc. 2d 891, 893 (Sup. Ct. App. Term, 1st Dept. 1976) ............................. 9

*Simmons v. United States*, 805 F.2d 1363, 1366 (9th Cir. 1986) ........................................... 8, 11

*Simms v. Bergamo*, 3 N.Y.2d 531, 534-535 (1957) .................................................................... 12

*Sutton v. Earles*, 26 F.3d 903, 910 (9th Cir. 1994) .................................................................... 16

*Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) ............................................. 3

*U.S. v. Sforza*, 326 F.3d 107, 110 (2d Cir. 2003) ........................................................................ 3

*United Food & Commercial Workers Union, Local 919 v.*
  *Centermark Properties Meriden Square*, 30 F.3d 298, 301 (2d Cir. 1994) ............................... 3

*United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) ........................................................... 15

*Vermont Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ............ 4

{6422208: }

*Vicuna v. Empire Today, LLC,*
2014 N.Y. Misc. LEXIS 1673 at *9 (Sup. Ct. N.Y. Cty., April 8, 2014),
*affirmed in pertinent part* 128 A.D.3d 578 (1st Dept. 2015)......................................... 11

*Vigilant Ins., Co. v. Employers Ins. of Wausau*, 626 F.Supp. 262, 265 (S.D.N.Y. 1986) .............. 8

*Williams v. United States*, 350 U.S. 857 (1955) ........................................................... 7

*Zipkin v. Freeman*, 436 S.W.2d 753, 761 (Mo. 1968)............................................... 11

**Rules**

Fed. R. Civ. P. 8(c)(1).................................................................................. 14

Fed. R. Civ. P. 12(b)(1)............................................................................. 1, 2, 3

Fed. R. Civ. P. 56.................................................................................. 1, 4

**Statutes**

28 U.S.C. §1346(b)(1) ............................................................................. 4

28 U.S.C. §2672................................................................................. 4, 5

28 U.S.C. §2679(b)(1) ........................................................................... 4

28 U.S.C. §2680................................................................. 5, 6, 13, 14

38 U.S.C. §7316................................................................. 5, 6, 13, 14

**Other Authorities**

*A. Stone, M.D., Law Psychiatrist and Morality*, p. 199 (1984) ..................................... 8

Michael D. McCafferty & Stephen M. Meyer,
*Medical Malpractice: Bases of Liability*, §10.18 (1985).......................................... 8

## PRELIMINARY STATEMENT

This memorandum is submitted in opposition to the motion of the defendant, United States of America (the "Government"), pursuant to Fed. R. Civ. P. 12(b)(1) and 56, for an order dismissing Plaintiff's Complaint in its entirety as against the Government.

## STATEMENT OF FACTS

The facts and circumstances relevant to the instant motion are referenced in this memorandum, the accompanying affidavit of Burton Singerman, M.D. and the accompanying Response to the Government's Statement of Undisputed Facts.

## STATEMENT OF THE CASE

The complaint in this action was filed on June 4, 2015 [Docket No. 1]. In lieu of an Answer and on August 13, 2015, the Government moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) based upon a lack of subject matter jurisdiction and a failure to state a claim. [Docket Nos. 5-6]. Plaintiff filed his opposition papers on September 4, 2015 [Docket No. 8] and, on September 14, 2015, Plaintiff filed an Affidavit of Dr. Sargent in further opposition to the Government's motion [Docket No. 10]. After the Government filed reply papers on September 25, 2015 [Docket No. 11], the Court held oral argument on the motion on December 15, 2015, reserving decision [Docket No. 13]. Co-defendant, Erica L. Sargent, Ph. D. ("Dr. Sargent") filed her Answer and Cross-Claim against the Government on December 29, 2015 [Docket No. 14].

On March 7, 2016 this Court issued its Decision and Order denying the Government's motion to dismiss [Docket No. 15]. In denying the Government's motion to dismiss the plaintiff's claim based upon vicarious liability of the Government, this Court noted:

> Thus, the Court cannot conclude, as a matter of law, that simply
> because the alleged negligent conduct involved intimate sexual

>        relations, Dr. Sargent was acting outside the scope of her
>        employment. Rather, the resolution of that issue appears to be tied
>        to the ultimate resolution of the merits of plaintiff's claims – *i.e.*
>        whether Dr. Sargent was providing treatment as a psychotherapist
>        when she commenced sexual relations with plaintiff and then
>        abruptly ended the relationship.

[Docket No. 15, p. 9]. This Court's Decision and Order went on to note that: "[h]ere, there are

plainly issues of fact as to whether Dr. Sargent was acting in the scope of her employment"

[Docket No. 15, p. 10]. With respect to Plaintiff's second claim for negligent supervision, this

Court observed that: "[h]ere, plaintiff has sufficiently alleged that Dr. Sargent's supervisors,

professional colleagues, or other VA personnel knew or should have known of Dr. Sargent's

intimate relationship with plaintiff, and yet they took no steps to intervene [Docket No. 15,

p. 12]. For these reasons, this Court denied, in its entirety the Government's motion to dismiss,

although it did so without prejudice subject to renewal upon the completion of discovery. Now

that discovery is complete, the Government renews its motion to dismiss and also seeks

summary judgment.

On March 21, 2016, the Government filed its answer with cross-claim against Dr. Sargent

[Docket No. 16]. The parties then began to pursue discovery.

## ARGUMENT

## POINT I

## APPLICABLE STANDARDS

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction.

The Government correctly points out that, in response to a motion to dismiss pursuant to

Fed. R. Civ. P. 12(b)(1), a plaintiff asserting Federal Jurisdiction assumes the burden of proof.

The real question is what burden the plaintiff must carry:

> Although the party invoking federal jurisdiction has the overall burden of proof on a 12(b)(1) motion, *Learner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) *citing Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994), a federal court may dismiss a claim for lack of subject matter jurisdiction only if it appears that the plaintiff can prove no set of facts that would support jurisdiction. *U.S. v. Sforza*, 326 F.3d 107, 110 (2d Cir. 2003).

*Baumgart v. Stony Brook Children's Serv., P.C.*, 2005 U.S. Dist. LEXIS 32389 *11 (E.D.N.Y. 2005). Once a plaintiff's allegations of subject matter jurisdiction are challenged by a defendant, the plaintiff needs to support the jurisdictional allegations "by competent proof." *United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square*, 30 F.3d 298, 301 (2d Cir. 1994). "A plaintiff can defeat a motion to dismiss for lack of subject matter jurisdiction by establishing a prima facie case of federal subject matter jurisdiction." *Fitzpatrick v. United States*, 726 F.Supp. 975, 978 (D.C. Del. 1989). It is respectfully submitted that, on this record, Plaintiff has offered competent proof establishing, as a matter of law, the existence of subject matter jurisdiction.

While the Government may be correct in stating that a showing of subject matter jurisdiction may not rely on favorable inferences drawn from the pleadings, the applicable standard is not a strict one:

> In determining whether a plaintiff has met this burden, we will not draw 'argumentative inferences' in the plaintiff's favor. We will, however, construe jurisdictional allegations liberally and take as true uncontroverted factual allegations.
>
> *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

Here, a satisfactory showing has been made to support the existence of subject matter jurisdiction.

## B.     Standard on a Summary Judgment Motion.

Summary judgment is only appropriate if the evidence shows that "there is no genuine issue as to an immaterial fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is genuine if "a reasonable jury" could decide it in favor of the non-movant. *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the burden to show that no genuine issue of material fact exists. *Vermont Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241,244 (2d Cir. 2004).  For summary judgment purposes, all evidence is to be construed in the light most favorable to the non-movant, and every justifiable inference must be drawn in that parties favor. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

## POINT II

## STATUTORY FRAMEWORK

With the enactment of the Federal Tort Claims Act ("FTCA"), the Government waived sovereign immunity with respect to "civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1).  The FTCA is the exclusive means by which a party may sue "the United States provided by sections 1346(b) and 2672 of this title [28 U.S.C. §§ 1346(b) and 2672] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment..." 28 U.S.C. §2679(b)(1).  Pursuant

{6422208: }

4

to 28 U.S.C. §2672, a FTCA claimant is required to present a claim in writing to the appropriate federal agency within two years after such claim accrues; a civil action cannot be commenced until the claim is denied 28 U.S.C. §2401(b).  In this case, Plaintiff timely submitted his claim to the VA on or about July 15, 2014 and, on or about May 6, 2015, the VA rejected plaintiff's claim.

There are exceptions to the waiver by the Government of its sovereign immunity. Specifically enumerated claims that are not cognizable under the FTCA are set forth in 28 U.S.C. §2680.  In particular, Section 2680 excludes any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." §2680(a).  Pursuant to 28 U.S.C. §2680(h) any claim "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" is also excluded.[1]

One additional refinement of the FTCA relates to its application to claims for damages for personal injury, including death, arising from the malpractice or negligence of a health care employee of the Veteran's Administration.  Specifically, 38 U.S.C. §7316 (the "VA Immunity Statute") provides that the FTCA is the exclusive remedy for claimants seeking such damages, 7316(a)(1)(B), and that, upon certification by the Attorney General that a defendant was acting within the scope of such person's employment, any action commenced against a VA Administration health care provider can be removed to federal court where the case against the individual provider will be dismissed and the Government will be substituted as the party defendant.  38 U.S.C. §7316(c).  Here, no such certification has been made by the Government

---

[1] Neither of these exceptions to the FTCA was asserted by the Government as an affirmative defense in its Answer.

{6422208: }

5

and, to the contrary, the Government denies that Dr. Sargent was acting within the scope of her employment at the time the actions complained of took place.

Additionally, 38 U.S.C. §7316(f) provides that the exception to the waiver of sovereign immunity provided in 28 U.S.C. §2680(h) for intentional torts "shall not apply to any claim arising out of a negligent or wrongful act or omission of any person described in subsection (a) in furnishing medical care or treatment . . . while in the exercise of such person's duties in or for the Administration." Thus, if the Court determines that an issue of fact exists as to whether or not Dr. Sargent committed medical malpractice while in the scope of her employment, then plaintiff's claim is cognizable under 38 U.S.C. §7316(a). If, on the other hand, the Court determines that Dr. Sargent committed an intentional tort, then plaintiff's claim is cognizable under 38 U.S.C. §7316(f), notwithstanding the general exception for intentional torts contained in 28 U.S.C. §2680(h).

## POINT III

### DOCTOR SARGENT WAS ACTING WITHIN THE SCOPE OF HER EMPLOYMENT

**A.      The Mishandling of the Transference Phenomenon Constitutes Malpractice or Professional Negligence.**

For Plaintiff to prevail, it must ultimately be established that the professional negligence complained of was committed by a "federal employee" as that term is defined within the FTCA acting within the scope of her employment. While the Government does not dispute that Dr. Sargent was a federal employee, it does challenge Plaintiff's claim that Dr. Sargent was acting within the scope of her employment at the time and place of the acts complained of in the Complaint.

The FTCA does not define the term "scope of employment." *See Pitt v. Matola*, 890 F.Supp. 89, 92 (N.D.N.Y. 1995).   Instead, the determination of whether an employee is acting within the scope of her employment depends upon the law of the state in which the tort occurred. *Williams v. United States*, 350 U.S. 857 (1955); *Cronin v. Hertz Corp*, 818 F.2d 1064 (2d Cir. 1987).   "[D]etermination of the scope of employment issue depends largely on the facts and circumstances peculiar to each case." *Petrousky v. United States*, 728 F.Supp. 890, 897 (N.D.N.Y. 1990).

Under New York law, the question of whether an employee was acting within the scope of his or her employment is ordinarily a question of fact for the jury. *Riviello v. Waldron*, 47 N.Y.2d 297,303 (1979).   This is because the scope of employment determination is "so heavily dependent on factual considerations." *Riviello, supra*, *Brandford v. Singh*, 136 A.D.3d 726, 728 (2d Dept. 2016); *Petrescu v. College Racquet Club, Inc.*, 40 A.D.3d 947, 949 (2d Dept. 2007).   It is respectfully submitted that, on this record, the question of whether or not Dr. Sargent was acting within the scope of her employment at the time the acts complained of in the Complaint took place cannot be decided as a matter of law; rather, it is a question which should be decided by the fact finder at trial (the Court in this FTCA action).

According to the Government, because this case involves "sexual misconduct or sexual abuse," the Court should determine as a matter of law that Dr. Sargent was not acting within the scope of her employment (Docket No. 39, p. 12-13).   However, the Government glosses over the fact that the acts alleged involved, ostensibly, consensual sexual conduct between a patient and his therapist at the end of a long-term professional relationship in which Mr. Zeranti was encouraged to place his trust in Dr. Sargent and disclose to her his most private thoughts and feelings.   This is not a case where a physician or hospital employee subjected a patient to

7

unwanted and uninvited touching, sexual abuse or worse. As was argued by Plaintiff previously in opposition to the first motion [Docket No. 8, pp. 8-12], claims involving allegations of improper sexual relations between a patient and a psychiatrist or other therapist are different from claims involving improper sexual relations or sexual abuse on the part of other physicians or healthcare professionals. This is because a sexual relationship between a therapist and his or her patient cannot be separated from the ongoing therapeutic relationship that has developed between them. *Vigilant Ins., Co. v. Employers Ins. of Wausau*, 626 F.Supp. 262, 265 (S.D.N.Y. 1986) *quoting L.L. v. Medical Protective Co.*, 122 Wis. 2d 455 (1984).

> The crucial factor in the therapist-patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitive of a patient than sexual involvement of a lawyer with a client, a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers and gynecologists do not offer a course of treatment and counseling predicated upon handling the transference phenomenon.

*Simmons v. United States*, 805 F.2d 1363, 1366 (9th Cir. 1986) *quoting A. Stone, M.D., Law Psychiatrist and Morality*, p. 199 (1984). "The 'transference phenomenon" refers to the tendency of patients to become emotionally dependent upon, and trusting of, their psychologist or psychiatrist. *Benavidez v. United States*, 177 F.3d 927, 930 (10th Cir. 1999), *citing*, Michael D. McCafferty & Stephen M. Meyer, *Medical Malpractice: Bases of Liability*, §10.18 (1985). Plaintiff's claim against the government for vicarious liability is based, in part, upon the negligence of Dr. Sargent and, in turn, the Government, for "mismanagement of the transference phenomenon." [Docket No. 1, ¶¶ 12, 20]. "Courts have uniformly regarded mishandling of transference phenomenon as malpractice or gross negligence." *Simmons, supra*, 805 F.2d at 1365. "'[T]he injury to the plaintiff [is] not merely caused by the consummation of acts of sexual intercourse with the defendant. Harm [is] also caused by the [therapist's] failure to treat

the patient with professionally acceptable procedures.'" *Andrews v. United States*, 732 F.2d 366, 371 (4th Cir. 1984); *see also, Roy v. Hartogs*, 85 Misc. 2d 891, 893 (Sup. Ct. App. Term, 1st Dept. 1976).

Dr. Sargent had been seeing Mr. Zeranti since December of 2011 and it was not until May of 2013 that their relationship morphed from a professional one to a personal one. During that period of time, Dr. Sargent had counseled Mr. Zeranti on dozens of occasions and the therapy notes that she did prepare reflect the fact that Mr. Zeranti placed his trust in Dr. Sargent and depended upon her for his mental health. Thus, unlike sexual misconduct by other healthcare professionals, inappropriate sexual relations between a therapist and her patient are closely intertwined with the therapeutic treatment, particularly where, as here, the intimacy takes place after a relationship has been nurtured over an extended period of time and the patient has already directed his trust and affection to the therapist. "[P]atients are particularly vulnerable to inappropriate sexual conduct by those providing psychiatric treatment." *Roe v. Cal. Dep't of Developmental Servs.* 2017 U.S. Dist. LEXIS 81493 (N.D. Cal., May 26, 2017). In New York, sexual encounters between a patient and his therapist rise to the level of malpractice precisely because the challenged conduct bears such a close and substantial relationship to the actual treatment. *See Dupree v. Giugliano*, 87 A.D.3d 975, 977-978 (2d Dept. 2011), *affirmed in pertinent part,* 20 N.Y.3d 921 (2012).

At his deposition, Mr. Zeranti testified regarding the evolution of his feelings towards Dr. Sargent:

\* \* \*

> I started seeing her and, you know – how do I put this?
> Dr. Venzor, I always respected, was a good man, but he had a
> completely different style than her, and right away I connected

{6422208: }

9

with her as far as what I thought was the counseling, what I was
there for.

And over time, you know, obviously in any I think doctor/patient
session, it's not entirely about what you're there for, you're talking
about personal little things, got to know the person. She of course
knew everything about me, I believe, that I had spilled to her about
me. And over time I started realizing that I felt like I was falling in
love. And since it's a rare thing in my life, this was highly
unusual, I started expressing it to her first verbally then –

Q.    What did you say to her?

A.    That I – you know, I said at one point, I know I said – I can
      paraphrase. I said I'm probably going to end up losing you
      as my doctor, but I must tell you, I'm falling in love with
      you, but I did.

Q.    Do you recall when that was?

A.    I'm not exactly sure. Perhaps 8, 10 months into it.

Q.    Ok, and how did she respond to that?

A.    Initially saying that, you know, there are parameters and,
      you know, that if things were different, you know, that she
      had two things; the first one was that she needed to be
      friends with that person and she felt like we were already
      there.

(Zeranti Dep. Tr. pp. 87-88). In his affidavit submitted in opposition to the Government's first

motion [Docket No. 8-1], Mr. Zeranti stated: "[b]ecause of the trust I had placed in Dr. Sargent,

when we began to have sexual relations, I did not see that as being outside of the therapeutic

relationship." It appears that Dr. Sargent, as well, was conflating the personal and the

professional relationship between her and Mr. Zeranti. At his deposition, Mr. Zeranti testified

that: "well, you know, for me the most troubling thing of this whole thing was she assured me

before we entered, as we entered the relationship was consummated, that she would be there as

my doctor. She would always be there." (Zeranti Dep. Tr. p. 92). It is respectfully submitted

that Dr. Sargent's acts and omissions which resulted in the transformation of the professional relationship into an intimate one were not so much a deviation or departure from her therapy as they were evidence of improper or negligent therapy. *See, e.g., Zipkin v. Freeman*, 436 S.W.2d 753, 761 (Mo. 1968). Here, the sexual intimacy occurred in conjunction with, or in close temporal proximity to, Dr. Sargent's legitimate counseling activities. *Simmons v. United States*, 805 F.2d at 1365. If the Government is correct that Dr. Sargent's conduct is more properly characterized as sexual abuse or a sexual assault, then it was still within the scope of her employment.

In New York State:

> The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another.

*De Wald v. Seidenberg*, 297 N.Y. 335, 338 (1948) [citations omitted]. Under New York law, an employer is no longer "necessarily excused merely because his employees, acting in furtherance of his interests, exhibit human failings and perform negligently or otherwise than in an authorized manner." *Riviello v. Waldron, supra* at p.302. Even an intentional tort committed by an employee can result in liability for his or her employer under *respondeat superior*. "If the employee was acting 'within the scope of the employment' at the time of the commission of the tort . . . 'the employer need not have foreseen the precise act or manner of the injury as long as the general type of conduct may have been reasonably expected.'" *Vicuna v. Empire Today, LLC*, 2014 N.Y. Misc. LEXIS 1673 at *9 (Sup. Ct. N.Y. Cty., April 8, 2014), *affirmed in pertinent part* 128 A.D.3d 578 (1st Dept. 2015); *see also, Simms v. Bergamo*, 3 N.Y.2d 531, 534-

535 (1957). "The proper test for determining when intentionally wrongful conduct falls within the 'scope' of employment is not clear." *Ira S. Bushey & Sons, Inc. v. United States*, 276 F. Supp. 518, 527 (E.D.N.Y. 1967), *affirmed*, 398 F.2d 167 (2d Cir. 1968).

The Government in its motion papers contends that Dr. Sargent concealed her true feelings for Mr. Zeranti in her therapy notes or in her conversations with her supervisor, Mr. Brent or her colleague, Dr. Wahlig, when she sought their assistance in dealing with Mr. Zeranti. However, there is no evidence in the record as to precisely when Dr. Sargent's personal feelings for Mr. Zeranti manifested themselves or the precise date on which the ethical boundary line was crossed. Indeed, the fact that the transition was gradual, if not imperceptible, only supports the notion that Dr. Sargent was acting within the scope of her employment until it was too late. The Court might well conclude that Dr. Sargent's negligence began *when* she lost her way and was, therefore, no longer providing Mr. Zeranti competent care and treatment but *before* she actually committed any ethical lapse. *See, Jacques v. United States,* 2015 U.S. Dist. LEXIS 21880 at *16 (D.C. Mass., February 23, 2015) [Negligent counseling was the proximate cause of the sexual relationship]. With all due respect, there is no clear evidence to indicate exactly when Dr. Sargent first returned Mr. Zeranti's affection.

> There is in such cases no broad line of demarcation separating the doctrine of liability and non-liability. It often becomes shadowy and indistinct. To a large extent each case must be decided upon its own peculiar facts.

*Bryan v. Bunis*, 208 A.D. 389, 390 (4th Dept. 1924). The Government's motion relies on notion that there is a bright line in this case which requires the Court to rule, as a matter of law, that Dr. Sargent's conduct was intended to serve only her own personal interests. The accompanying affidavit of Burton Singerman, M.D. controverts the characterization of Dr. Sargent's conduct as premeditated and calculated. On the contrary, his affidavit indicates that Dr. Sargent was

12

confused, under great stress and in a vulnerable emotional state when the ethical boundary was crossed.  On this record, no such bright line exists; rather, this is precisely the reason why New York courts routinely reserve the determination of this issue for the fact-finder.

**B.**  **If Dr. Sargent's Conduct was not Professional Malpractice, then her Conduct was Intentional and the Plaintiff's Claim is Authorized by 38 U.S.C. §7316(f).**

As noted above (Point II, *supra*), 38 U.S.C. § 7316(f) provides that the exception of the waiver of sovereign immunity provided in 28 U.S.C. §2680(h) for intentional torts "shall not apply to any claim arising out of a negligent or wrongful act or omission of any person described in subsection (a) and furnishing medical treatment . . . while on the exercise of such person's duties in and for the [Veteran's] Administration.  In enacting 38 U.S.C. §7316(f), Congress intended to expand the scope of wrongdoing alleged by veterans for which the Government would accept responsibility:

> Although Congress was specifically concerned with medical battery, the remedy available under § 7316(f) is not limited to battery.  Instead, by rendering 28 U.S.C. §2680(h) inapplicable, § 7316(f) allows the United States to be sued for 'assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights, . . .' 28 U.S.C. 2680(h), when such claims arise in the context of VA health care employees providing medical care or treatment, 38 U.S.C. §7316(f).  As we noted in *Franklin*, Congress could have resolved the problem in a variety of ways, and it need not have waived sovereign immunity for all of the intentional torts listed in 28 U.S.C. §2680(h) but '*Congress chose . . . "to expand the circumstances under which the Federal government accepts liability for the acts of its employees acting within the scope of their employment so as to cover actions of VA health-care employees that are characterized as intentional torts under the laws of various states."*  *Franklin*, 992 F.2d at 1500 [*Franklin v. United States*, 992 F.2d 1492 (10th Cir. 1993)].  Thus, in the context of VA health care employees providing medical care or treatment, § 7316(f) provides a remedy under the FTCA for claims of intentions torts, including false arrest and false imprisonment.

*Ingram v. Faruque*, 728 F.3d 1239, 1249 (10th Cir. 2013) (emphasis added); *see also, Hutchison v. United States*, 2017 U.S. Dist. LEXIS 79044 at *13 (D. Kan., May 23, 2017); *Crosby v. United States*, 2014 U.S. Dist. LEXIS 29228 at *5 (D.S.C., March 6, 2014).

The Government contends that Dr. Sargent's conduct is akin to "sexual misconduct or sexual abuse" and it relies upon cases where an employee has committed a sexual assault of some nature. In so doing, the Government characterizes Dr. Sargent's conduct as an intentional tort such as a sexual assault or battery. If the Court is disinclined to find that Dr. Sargent's conduct constitutes malpractice or professional negligence because it deems the conduct intentional in nature, then the facts of this case support a plausible claim for assault or battery within the purview of 38 U.S.C. §7316(f). *See Parker v. United States*, 2018 U.S. App. LEXIS 11731 at *4 (7th Cir. May 4, 2017) [even though plaintiff's Complaint mentions "malpractice" rather than "medical battery" the facts support a plausible claim of medical battery]. In his accompanying affidavit, Dr. Singerman notes that, given his diagnosis, it could be argued that Mr. Zeranti lacked the capacity to consent to sexual intercourse with Dr. Sargent. For this additional or alternative reason, the facts support a claim under the VA immunity statute.

<div align="center">

**POINT IV**

**PLAINTIFF'S CLAIM OF NEGLIGENT SUPERVISION IS NOT
BARRED BY THE GOVERNMENT'S NEWLY-ASSERTED
DISCRETIONARY FUNCTION DEFENSE**

</div>

The Government now asserts in support of its motion to dismiss a new defense based upon the discretionary function exception contained in 28 U.S.C. §2680(a)[2] "United States bears

---

[2] This affirmative defense was not included in the Government's Answer nor was the discretionary function exception asserted in support of the Government's initial motion to dismiss. Fed. R. Civ. P. 8(c)(1) requires a party to affirmatively state any avoidance or affirmative defense. Sovereign immunity is an "affirmative defense." *Leone v. United* States, 690 F.Supp. 1182, 1184 (E.D.N.Y. 1988). Failure to plead an affirmative defense in an answer constitutes a waiver of that defense. *Cusamano v. Carlsen*, 2011 U.S. Dist. LEXIS 154403 at * 18 (N.D.N.Y., Dec. 16, 2011). Thus, sovereign immunity is an affirmative defense which can be waived by failure to raise it in a responsive pleading. *See, e.g., Canadian Overseas Ores, Ltd. v. Compania de Acero del Pacifico S.A.*, 528 F.Supp.

the burden of proving the applicability of the discretionary function exception." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992). In order for negligent conduct to come within the discretionary function exception, "'(1) the acts alleged to be negligent must be discretionary, in that they involve an "element of judgment or choice" and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in "considerations of public policy" or susceptible to policy analysis.'" *Gibbons v. Fronton*, 533 F.Supp.2d 449, 455 (S.D.N.Y. 2008) *citing Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) *quoting United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) and *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). In order for a claim of negligent hiring or supervision to be barred by the discretionary function exception, the decision to hire or supervise the negligent employees must be "grounded in considerations of public policy or susceptible to policy analysis." *Gibbons, supra* at 455. An official's "lazy or careless failure to perform his or her discretionary duties" constitutes negligent conduct that is not "the kind of considered judgment "grounded in social, economic or political policy" which the Discretionary Function exception is intended to protect. *Coulthurst v. United States*, 214 F.3d 106, 109-11 (2d Cir. 2000).

Dr. Sargent was evidently so troubled by Mr. Zeranti's persistence that she also consulted on two separate occasions with her colleague, Elizabeth Louise Wahlig, Ph. D., whose practice includes family and couples therapy. Dr. Wahlig testified at her deposition that, although she came to the conclusion after her meetings with Dr. Sargent that she (Dr. Wahlig) should recommend that Dr. Sargent transfer the patient to another therapist, she never actually advised Dr. Sargent to do so. (Wahlig Dep. Tr., pp. 69-70). Dr. Wahlig also testified that, at her second meeting with Dr. Sargent, she (Dr. Wahlig) was concerned that the patient "had not backed down

---

1337, 1344 (S.D.N.Y. 1982); *contra, Crow v. United States*, 634 F.Supp. 1085, 1087-88 (D. Kan. 1986). Even assuming that the defense of sovereign immunity cannot be waived, Plaintiff was still prejudiced by not conducting any meaningful discovery related to this defense since it was not an issue in the case until discovery closed.

{6422208: }

nor respected the limits that she (Dr. Sargent) was trying to enforce." (Wahlig Dep. Tr., p. 68).

Clearly, Dr. Sargent was losing her ability to maintain appropriate boundaries with her patient.

Here, the failure on the part of Dr. Sargent's supervisors at the VA Hospital in Buffalo to properly supervise her and take action in response to the obvious signs of trouble in the therapeutic relationship between Dr. Sargent and Mr. Zeranti is not subject to the discretionary function exception. As can be seen from the accompany Affidavit of Dr. Singerman, Dr. Frohm and Mr. Brent abdicated their responsibility to monitor Dr. Sargent and, in particular, her timely completion of her therapy notes of her sessions with Mr. Zeranti. Had they done what they were required to do and what they undertook to do they would have seen that, for the most part, Dr. Sargent stopped preparing any substantive notes regarding her sessions with Mr. Zeranti in November of 2012. Even after Dr. Sargent sought guidance from Mr. Brent as to how to deal with Mr. Zeranti, he did not bother to review Dr. Sargent's therapy notes for this patient because, if he had, he would have seen that something was seriously wrong and, we submit, would finally have taken corrective action.

> We have held that '[a] decision not to warn of a specific, known hazard for which the acting agency is responsible is not the kind of broader social, economic or political policy decision that the discretionary function exception is intended to protect.' *Sutton v. Earles*, 26 F.3d 903, 910 (9th Cir. 1994) (concluding that the decision not to post speed limit due to agency-created underwater hazard was not subject to the discretionary function exception); *see also, Oberson v. USDA*, 514 F.3d 989, 998 (9th Cir. 2008) (holding that the agency was not protected by the discretionary function exception when it raised the speed limit on a snowmobile trail and then failed to warn of trail conditions that would be hazardous at that speed); *Boyd v. United States*, 881 F.2d 895, 897-98 (10th Cir. 1989) (holding that the discretionary function exception does not apply to failure to warn swimmers of the dangers posed by the government's zoning decision which permitted boats in a lake area).

> Where the government *creates* a danger, it must warn the public of that danger. To hold otherwise would unfairly allocate 'the entire burden' of government-created dangers to the individual, 'leav[ing] him destitute or grievously harmed,' and directly contravene the FTCA's liberal purposes. *Rayonier Inc. v. United States*, 352 U.S. 315, 320 (1957). (emphasis in original).

*Green v. United States*, 630 F.3d 1245, 1254 (9th Cir. 2011) [failure to notify endangered property owners of risks of backfire not subject to policy analysis or the discretionary function doctrine].

It is no answer either that Mr. Brent and Dr. Frohm were unable to fulfill their obligations and monitor Dr. Sargent's care and treatment of Mr. Zeranti because resources at the VA Hospital in Buffalo were spread too thin.[3] "Every slip and fall, every failure to warn, every inspection and maintenance decision can be couched in terms of policy choices based on allocation of limited resources . . . [w]ere we to view inadequate funding alone as sufficient to garner the protection of the discretionary function exception, we would read the rule too narrowly and the exception too broadly." *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002). Indeed, both Dr. Frohm and Dr. Sargent acknowledged that there was a specific requirement within the VA Hospital for the timely completion of therapy notes. Because there was a policy that mandated that an employee follow a particular course of action, the requirement of "judgment or choice" under the discretionary function exception cannot be satisfied. *See, Hutchison v. United States*, 2017 U.S. Dist. LEXIS 79044 at *18-19 (D. Kan.,

---

[3] The Government has submitted the Declaration of Barbara J. Nelson-Thomas Ph. D., the Psychology Section Chief at the Buffalo VA Medical Center [Docket No. 38]. She has not previously been identified as a witness and, perhaps, more troubling, she purports to offer expert testimony regarding what would and wouldn't be "practical" for a clinic like the one in Buffalo to implement. According to Dr. Nelson-Thomas, the Plaintiff is claiming that a supervisor should have been "inserted" in the middle of Dr. Sargent's therapeutic relationship and that a supervisor should monitor "every therapy session" and "every therapy note." Clearly, that is not the Plaintiff's contention in this case. We submit that, Dr. Sargent's supervisors were already well aware of her ongoing deficiencies in preparing timely and complete therapy notes, that Dr. Brent crafted a monitoring regime which he then ignored and that subsequent events raised red flags which should have prompted intervention or, at least, a review of her therapy notes to ascertain the cause of her distress.

May 23, 2017) [proof that VA failed to comply with review requirements mandated by VHA Directive 2004-029 sufficient to warrant denial of motion to dismiss for lack of subject matter jurisdiction]. "A hospital has a duty to safeguard the welfare of its patients, even from harm inflicted by third persons, measured by the capacity of the patient to provide for his or her own safety." *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 252 (2002).[4]

## CONCLUSION

In its Memorandum of Law (p. 6), the Government claims that, on May 28, 2013, when Dr. Sargent's misconduct was disclosed, "[t]he VA's primary purpose was to ensure patient safety." In its Statement of Undisputed Facts, it states that "[t]he VA reported Dr. Sargent's misconduct to the New York State Office of Professions" (No. 116) and that "[t]he VA reported Dr. Sargent's misconduct to the National Practitioner Data Bank ("NPDB") (No. 117). If the VA was really concerned with patient safety then why did it wait until August 8, 2015 to notify the Office of Professions and until May 20, 2016, to notify the NPDB, notwithstanding the VA's clear obligation to do so promptly? By then, the lawsuit was pending and Dr. Sargent had been seeing patients in a private practice setting for *more than two years*.

Subsequent events have exposed the systemic failings of the VA system, particularly with respect to its non-delegable duty to provide adequate oversight and its responsibility to protect patients from negligent or predatory physicians and other health care practitioners. No doubt, the vast majority of its employees are hard-working and dedicated people who recognize the important sacrifices our veterans have made. But investigations conducted by the General

---

[4] Separate and apart from the negligent supervision theory of liability, "[t]he Second Circuit has recognized this emerging 'Independent Affirmative Duty' exception, [to the bar against FTCA claims based on intentional torts], which suggests that where the government's alleged negligence is independent of the supervision of its employees, the intentional tort exception does not bar the claim." *Rosse v. United States*, 110 F.Supp.3d 415, 424 (N.D.N.Y. 2015) Applying this exception, the Court in *Rosse* held: "[a] medical facility's duty to safeguard its patients is independent of any respondeat superior liability for its employees' tortious conduct." 110 F. Supp. 3d at 424-25.

Accounting Office, Congress and others have disclosed a pattern of neglect and abuse, particularly when it comes to oversight of physicians and other professionals.

In its report on the deficiencies in the way VA Medical Center officials review the clinical care delivered by licensed providers, the GAO concluded that these officials failed to conduct and document provider reviews in a timely manner. "GAO found that the VHA policies do not require documentation of all types of clinical care reviews and do not establish timeliness requirements." (O'Brien Aff. Ex. 3).

Notably, the GAO also found that:

> ...officials at the selected VAMC's misinterpreted or were not aware of VHA policies and guidance related to NPBD and SLB (state licensing boards) reporting processes resulting in providers not being reported. GAO also found that the VISNs (Veterans Integrated Service Networks) do not conduct adequate oversight of NPDB and SLB reporting practices and cannot reasonably ensure appropriate reporting of providers. As a result, VHA's ability to provide safe, high quality care to veterans is hindered because other VAMCs, as well as non-VA health care entities, will be unaware of serious concerns raised about a provider's care.

(Exhibit "3"). This case serves as a poster child for all the failings identified by the GAO in its report. The statutory framework discussed above (Point II) is designed to provide a remedy for veterans like Mr. Zeranti and the Government's efforts to deprive him of his right to have a trial should be rejected.

Dated: August 1, 2018

Respectfully submitted,

WOODS OVIATT GILMAN LLP

By: _____

Donald W. O'Brien, Jr., Esq.
*Attorneys for Plaintiff*
700 Crossroads Building
2 State Street
Rochester, New York 14614
585-987-2800

19